UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDITHA DAMASCO,<br><br>      Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. C17-641 RSM<br><br>FINDING OF FACTS AND<br>CONCLUSIONS OF LAW AND ORDER |

## I.    INTRODUCTION

This action arises out of a May 26, 2013 collision between a United States Postal Service vehicle and Plaintiff, a pedestrian. The Court conducted a bench trial on June 27–28, 2018, and August 24, 2018. Dkts. #59, #60, and #66. Plaintiff was represented by David H. Zielke and Defendant was represented by Tricia S. Boerger of the United States Attorney's Office in Seattle, Washington. The Court considered the testimony of witnesses that the parties presented at trial, deposition testimony of witnesses that the parties submitted to the Court, the exhibits that the Court admitted into evidence, and the arguments of counsel. In addition, the Court has entered a pretrial order and the parties have submitted trial briefs and proposed findings of fact and conclusions of law. Dkts. #43–45 and #64–65. The Court has weighed the testimony, exhibits, and other evidence using the "preponderance of the evidence" standard. Being fully advised, the Court makes the following findings of fact and conclusions of law.

FINDING OF FACTS AND CONCLUSIONS OF LAW AND ORDER – 1

## II. CREDIBILITY OF THE WITNESSES

Plaintiff testified at trial and presented three additional witnesses on her behalf. Plaintiff's friend, Ms. Marciana Ibarra, and Plaintiff's niece, Ms. Lorna Farinas, testified in person and Dr. William Clark, Plaintiff's orthopedic surgeon, testified by way of recited deposition testimony.

Defendant presented seven witnesses. Ms. Deidre Stoddard, the vehicle's driver, Mr. Bradley Hall, a truck driver following the United States Postal Service vehicle, Mr. Michael Yamamoto, a police officer who responded to the scene of the collision, and Mr. Eric Knowles, a forensic economist, all testified in person. Dr. Michael Battaglia, Ms. Ashley Giesa, and Ms. Peggy Shibata were all expert witnesses who testified by way of written deposition testimony.

In a bench trial, the Court is empowered and required to judge the credibility of the witnesses. *See Spokane Arcade, Inc. v. City of Spokane*, 75 F.3d 663, 665 (9th Cir. 1996). The Court finds that all of the live witnesses were generally credible.

Ms. Stoddard, Mr. Hall, and Officer Yamamoto provided complete answers which appeared to be honest and their demeanor and behavior on the witness stand leads the Court to conclude that they were truthful, credible witnesses. *Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999) ("We give 'special deference' to a credibility determination that is based on demeanor."). Mr. Hall's testimony may have conflicted with prior statements, but the Court finds the inconsistencies indicative of the difficulty remembering a single night more than five years prior and not indicative of dishonesty. Mr. Hall's memory did appear limited, however, and the Court weighs the testimony accordingly. Further, the live testimony did not present one cohesive version of the events and the Court has accordingly credited portions of each individual's testimony in making the following findings. Mr. Knowles was likewise credible.

For Plaintiff, Ms. Farinas appeared credible but admitted there were periods she had little interaction with Plaintiff, going to her personal knowledge and the weight of her testimony. Plaintiff and Ms. Ibarra, both native Tagalog speakers, testified with the assistance of a court-certified interpreter, as necessary. While not going to the credibility of the testimony, the language barrier caused both witnesses' testimony to be limited, to the point, and often lacking detail. Plaintiff in particular did not appear to have an exceedingly clear memory of the events, tended to interpret her limited memories in her favor, and was most comfortable answering direct questions that were of limited assistance to the Court in assessing her credibility and experiences. Accordingly, the Court has discounted some of Plaintiff's generalized and limited testimony.

The Court did not have the benefit of observing the testimony and demeanor of the expert witnesses testifying by deposition. On the whole, the Court finds the witnesses' testimony credible and any inconsistencies or imprecisions have been factored into the weight of the testimony.

### III. FINDINGS OF FACT[1]

The following findings of fact are made by the Court based upon the evidence presented at trial, the Court's analysis of the credibility of the witnesses, and the Court's weighing of the evidence.

1. South 188th Street intersects with International Boulevard in SeaTac, Washington. Dkt. #43 at 3. South 188th Street runs east-west and International Boulevard runs north-south. Ex. A-3. The intersection contains traffic signals, crosswalks, and "walk signals" that control traffic in all directions. Dkt. #43 at 3–4; Ex. A-3.

---

[1] The parties stipulated to certain facts. *See* Dkt. #43. The Court has integrated the stipulated facts with the other findings of fact.

FINDING OF FACTS AND CONCLUSIONS OF LAW AND ORDER – 3

2. The intersection where the collision occurred is well lit by streetlights, but at night the streetlights allow for "pockets" of darkness between illuminated areas. Dkt. #62 at 94:16–19, 156:2–13, 163:3–13.

**A. Plaintiff**

3. Plaintiff worked two jobs at SeaTac Airport. *Id.* at 29:10–13.

4. Plaintiff lived off of South 188th Street—east of the intersection with International Boulevard and close to SeaTac Airport—and walked to work each day, which took approximately thirty minutes. *Id.* at 30:22–31:2.

5. On May 26, 2013, Plaintiff was scheduled to work at 5:00 a.m. and left her apartment at approximately 3:45 a.m. *Id.* at 30:16, 31:16.

6. Plaintiff was not likely to be late for work and was not in a hurry. *Id.* at 31:19–24.

7. Plaintiff was wearing black pants, a red t-shirt and a green jacket with the hood up and was caring a bag. *Id.* at 37:19–38:9.

8. Plaintiff walked west on the south side of South 188th Street to the intersection with International Boulevard, crossed from the southeast corner of the intersection to the northeast corner of the intersection and intended to cross International Boulevard to the northwest corner of the intersection. *Id.* at 33:3–36:20. This was a normal route for Plaintiff to take. *Id.* at 60:3–13.

9. Plaintiff does not remember pushing the button to activate a walk signal when she crossed South 188th Street or before she crossed International Boulevard. *Id.* at 36:3–12, 38:22–25. The prompt button on the northeast corner of the intersection must be pressed in order to activate the walk signal for the crosswalk on the north side of South 188th Street. Dkt.

#43 at 4. However, Plaintiff's regular practice was to push the button to activate the walk signal and to only cross with the walk signal. Dkt. #62 at 60:19–24.

10. Plaintiff does not remember whether she had the walk signal when she started crossing International Boulevard or the color of the traffic signals. *Id.* at 39:1–8.

11. Plaintiff began walking, at a normal speed, across International Boulevard inside of the crosswalk. *Id.* at 40:12–22, 55:1–7.

12. Plaintiff was almost out of the northbound lanes of International Boulevard when she was struck by a vehicle, near the median. *Id.* at 39:23–25, 40:1–6.

13. Plaintiff did not see the vehicle before it struck her. *Id.* at 40:9–10, 55:15–18.

**B. Ms. Stoddard**

14. Ms. Stoddard was traveling eastbound on South 188th Street and intended to make a left onto northbound International Boulevard. *Id.* at 93:9–22. Ms. Stoddard was driving a Postal Service vehicle—a 1998 Ford Windstar minivan—and was acting within the scope and course of her employment for the United States Postal Service. Dkt. #43 at 4. Ms. Stoddard was familiar with the vehicle. Dkt. #62 at 87:8–18.

15. Ms. Stoddard just missed making a protected left turn, was forced to wait a full light cycle for another left turn arrow, and was the first vehicle waiting to turn. Dkt. #43 at 4; Dkt. #62 at 93:9–25.

16. Ms. Stoddard was familiar with the intersection, traveling it two to three times a week. *Id.* at 92:1–2. Ms. Stoddard knew that there was often vehicle and pedestrian traffic in the area of the intersection, even at 3:45 in the morning. *Id.* at 93:2–8, 96:6–7. Ms. Stoddard was also familiar with the lighting conditions of the intersection. *Id.* at 94:6–24.

FINDING OF FACTS AND CONCLUSIONS OF LAW AND ORDER
– 5

17. While waiting, Ms. Stoddard observed a group of pedestrians cross International Boulevard, north of the crosswalk, from the west side to the east side and a stopped vehicle facing her in a westbound lane of South 188th Street. *Id.* at 95:15–96:13.

18. Ms. Stoddard was not using her cell phone, looking at the radio, or eating or drinking while waiting for the light to change. *Id.* at 96:14–21.

**C. The Collision**

19. Upon getting a green left turn arrow, Ms. Stoddard began her left turn at a normal speed. *Id.* at 96:23–25; Dkt. #43 at 4.

20. Ms. Stoddard proceeded with a protected left turn, during which Plaintiff's walk signal would not have been active. Deposition of Ashley Giesa ("Giesa Dep.") at 28:1–29:16. Rather, Plaintiff's walk signal would activate following the protected left turn. *Id.* at 31:6–8, 35:2–7.

21. The turn would have taken Ms. Stoddard approximately 7.7 seconds. *Id.* at 49:9–15. Given average walking speeds for women of Plaintiff's age, Plaintiff would have traveled between 39-62 feet in 7.7 seconds. *Id.* at 52:2–23; Ex. A-21.

22. While making the turn, Ms. Stoddard looked, for approximately a second, at the westbound vehicle to make sure it was not going to turn and when she looked back, Plaintiff was directly in front of her vehicle. Dkt. #62 at 97:1–16.

23. Ms. Stoddard attempted to avoid the collision but could not and struck Plaintiff. *Id.* at 97:5–16. The contact between the vehicle and Plaintiff was at the front left corner of the vehicle. Dkt. #43 at 5.

24. At no time did Ms. Stoddard see any pedestrians in the crosswalk and did not see Plaintiff before colliding with her. Dkt. #62 at 97:17–98:3, 123:9–10, 124:18–20.

25. Mr. Hall was driving a commercial truck behind the Postal Service vehicle. Dkt. #43 at 4. Dkt. #62 at 132:8–21, 134:1–21. Mr. Hall, in his truck, had a much higher vantage point of the intersection. *Id.* at 146:9–18.

26. Mr. Hall did not observe any pedestrians in the crosswalk or in the area as he and the Postal Service vehicle made the left hand turn. *Id.* at 136:1–9, 143:9–13.

27. Mr. Hall observed the Postal Service vehicle turn left, with a green light, and had, himself, proceeded mostly through the intersection when he saw the Postal Service vehicle stopped and somebody on the ground. *Id.* at 135:14–25.

28. Plaintiff came to rest in the western-most northbound lane, laying on her back, and with her head approximately ten feet north of the crosswalk. *Id.* at 100:19–23, 102:20–105:6; Exs. A-15, A-16, and A-17; Giesa Dep. at 41:19–42:10. Plaintiff is approximately five foot one. Ex. P-3; Ex. A-29 at 5.

29. The collision likely occurred in the same general vicinity as the location at which Plaintiff was found in the roadway. Deposition of Peggy Shibata ("Shibata Dep.") at 41:12–18.

30. There are several reasons that Ms. Stoddard may have had difficulty seeing Plaintiff. *Id.* at 59:21–60:9. Ms. Stoddard's ability to see was decreased in darkness. *Id.* at 47:2–5. Plaintiff's dark clothing against a dark background would have made it more difficult for Ms. Stoddard to see her. *Id.* at 53:18–54:9. Plaintiff was unlikely to be illuminated significantly by the lights of the Postal Service vehicle driven by Ms. Stoddard. *Id.* at 49:15–51:21, 56:9–24. Ms. Stoddard was less likely to see Plaintiff if she did not expect to encounter Plaintiff. *Id.* at 57:6–9. Ms. Stoddard's attention was likely drawn toward the vehicle facing her. *Id.* at 58:3–14.

### D. Plaintiff's Injuries, Recovery, and Damages

#### a. Injuries, Recovery, and Medical Expenses

31. The collision knocked Plaintiff to the ground and she could not use her leg and was bleeding from the back of her head. Dkt. #62 at 40:17–41:20.

32. Plaintiff was transported to Highline Medical Center and diagnosed with an inferior and a superior pubic ramus fracture of her pelvis, a non-displaced femoral neck fracture to her left hip and a scalp hematoma. Dkt. #43 at 5. Plaintiff was in a lot of pain. Dkt. #62 at 73:5–6.

33. Plaintiff had surgery to stabilize her fractured hip by implanting screws the next day. *Id.* at 42:1–2; Dkt. #43 at 5. The surgery was successfully performed by Dr. Clark, who has performed approximately 300-400 "hip pinnings." Dkt. #63 at 192:20–193:5, 195:15–22, 196:9–198:7.

34. Plaintiff was hospitalized for a week, during which she experienced significant pain, was not able to leave her bed, and needed help with using the bathroom. Dkt. #62 at 42:3–19, 73:7–11; Dkt. #43 at 5; Dkt. #63 at 208:6–20. Plaintiff was also treated for atrial fibrillation which was not caused by the collision but may have been exacerbated and did require treatment, while hospitalized, because of the collision. Dkt. #63 at 204:20–205:10; Deposition of Michael J. Battaglia, M.D. ("Battaglia Dep.") at 65:6–66:20.

35. Plaintiff then spent a month in a nursing home for intensive rehabilitation, where she needed assistance to shower, but was sometimes able to walk with a cane or a walker and took part in physical therapy. Dkt. #62 at 42:6–43:3; Dkt. #43 at 5; Dkt. #63 at 206:19–207:4. Plaintiff continued to be in significant pain and was very emotional. Dkt. #62 at 74:6–19.

36. Plaintiff then returned to home, where she was able to care for herself, for several months before she was able to return to work. *Id.* at 43:6–20. Plaintiff continued to feel some pain while recovering at home and needed to use a walker and had difficulty sitting and standing. *Id.* at 62:15–20.

37. Plaintiff did not go to physical therapy while recovering at home, but went four times after returning to work. *Id.* at 43:22–24; Ex. P-20.

38. Dr. Clark cleared Plaintiff to return to work on August 20, 2013. Dkt. #43 at 5.

39. Plaintiff's surgery and recovery were all fairly normal and Plaintiff was doing well when she was examined approximately a year after the surgery. Dkt. #63 at 212:9–21., 236:3–25; Battaglia Dep. at 68:8–69:20.

40. Since returning to work, Plaintiff has worked full time in a position that requires standing most of the day and regularly walked to work. Dkt. #62 at 52:6–16, 53:8–10.

41. Plaintiff now has some tenderness that is likely connected to the aging process as opposed to the surgery. Battaglia Dep. at 70:20–74:8. Irritation and tenderness can be caused by surgery such as Plaintiff's due to the screws protruding from the bone. Dkt. #63 at 200:2–201:5. But the tenderness is not caused, on a more likely than not basis, by the surgery or injury. *Id.* at 237:6–239:21; 253:21–254:12.

42. The medical services that Plaintiff received were caused by the collision and were reasonable and necessary treatment. Exs. P-8–17, 19–21; *see generally* Dkt. #62 at 189–254 (Testimony of Dr. Clark). The amounts charged for the following services were reasonable based upon Dr. Clark's personal knowledge: labs, radiology, patient visits, provider charges, anesthesiology, and physical therapy. Dkt. #63 at 223:25–224:10,

225:15–16, 226:18–20, 227:2–4, 230:7–9, 230:15–21, 231:13–16, 232:16–17, 232:23–233:1, and 250:12–23.

   b. **Lost Income**

43. At the time of the collision, Plaintiff was employed full-time by Concessions International, LLC, and part-time by Host International, Inc. Dkt. #43 at 5.

44. Dr. Clark cleared Plaintiff to return to work on August 20, 2013. *Id.*

45. After Dr. Clark released Plaintiff to return to work, she believed she was only physically able to return to her full time position. Dkt. #62 at 44:10–23.

46. Plaintiff resigned her position with Host International, Inc. on or about August 21, 2013. Ex. P-27 at Damasco_Plaintiff_000318–Damasco_Plaintiff_000323; Dkt. #62 at 54:3–7.

47. Plaintiff continues to work full-time—40 hours a week—for Concessions International as a cashier and must stand most of the day. Dkt. #62 at 52:6–14.

48. Plaintiff enjoys working and sends some amount of her earnings back to the Philippines to support her daughter and children. *Id.* at 30:6–13, 72:11.

49. Considering Plaintiff's annual earnings before the accident and her annual earnings in 2013, 2014, 2015, and 2016, Plaintiff earned $21,056 less than she otherwise would have been expected to earn in 2013, 2014, 2015, and 2016. *Id.* at 171:14–173:8.

   c. **Noneconomic Damages**

50. Plaintiff experienced significant pain from the time of injury until returning home from the nursing home and still occasionally experiences discomfort, difficulty sitting or standing, and difficulty walking. *Id.* at 45:2–46:18, 62:21–25. Plaintiff has not proven that the occasional discomfort is related to the collision. Dkt. #63 at 237:6–239:21;

FINDING OF FACTS AND CONCLUSIONS OF LAW AND ORDER – 10

253:21–254:12. Regardless, Plaintiff is able to walk to work and spend most of her work day standing. Dkt. #62 at 52:6–16, 53:8–10.

51. The collision continues to sometimes impact Plaintiff emotionally and she sometimes cries. *Id.* at 47:3–23, 63:22–64:3, 74:16–19, 76:1–4.

### IV. CONCLUSIONS OF LAW

1. Plaintiff brought this case pursuant to the Federal Tort Claims Act ("FTCA"). This court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1).

2. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1402 because the acts and omissions complained of occurred in this district.

3. The FTCA makes the United States liable for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of . . . employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where there the act or omission occurred." 28 U.S.C. § 1346(b)(1).

4. Because Plaintiff's injuries occurred in Washington State, the United States' liability is determined by Washington law. *See Liebsack v. United States*, 731 F.3d 850, 855 (9th Cir. 2013).

5. Under Washington law, a party asserting a claim of negligence has the burden to prove, by a preponderance of the evidence, duty, breach, causation, and damage. *Tolliver v. United States*, 957 F. Supp. 2d 1236, 1244 (W.D. Wash. 2012) (citing *Keller v. City of Spokane*, 146 Wash.2d 237, 242, 44 P.3d 845, 848 (2002)).

6. In Washington, common law negligence "is the failure to exercise reasonable or ordinary care" and ordinary care is "that degree of care which an ordinarily careful and prudent

person would exercise under the same or similar circumstances or conditions." *Woodward v. Taylor*, 184 Wash.2d 911, 366 P.3d 432, 436 (2016) (quoting *Gordon v. Deer Park Sch. Dist. No. 414*, 71 Wash.2d 119, 426 P.2d 824, 826 (1967)).

7. Additionally, the Washington Legislature can define a statutory "duty that is additional to, and different from, the duty to exercise ordinary care." *Mathis v. Ammons*, 84 Wash. App. 411, 928 P.2d 431, 434 (1996). However, "[a] breach of a duty imposed by statute . . . shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence." Wash. Rev. Code § 5.40.050.

8. Washington has adopted the following relevant statutory duties:

    a. "[E]very pedestrian shall obey the instructions of any official traffic control device applicable thereto." Wash. Rev. Code § 46.61.050.

    b. Pedestrians are "subject to traffic-control signals at intersections." Wash. Rev. Code § 46.61.230.

    c. "The operator of an approaching vehicle shall stop and remain stopped to allow a pedestrian or bicycle to cross the roadway within an unmarked or marked crosswalk when the pedestrian or bicycle is upon or within one lane of the half of the roadway upon which the vehicle is traveling or onto which it is turning." Wash. Rev. Code § 46.61.235(1).

    d. "[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway." Wash. Rev. Code § 46.61.245.

9. Under Washington law, even a driver or pedestrian with the right of way has a duty of continuous observation and must avoid injury to the party required to yield the right-of-way and must yield the right-of-way to both parties seen and parties that should have been

FINDING OF FACTS AND CONCLUSIONS OF LAW AND ORDER – 12

seen in the exercise of reasonable care. *Sulkosky v. Brisebois*, 49 Wash. App. 273, 279, 742 P.2d 193, 196 (1987).

10. Under Washington law a driver approaching a crosswalk has a duty of continuous observation and a pedestrian, whether in the crosswalk or not, must exercise reasonable care for her own safety. *Pudmaroff v. Allen*, 138 Wn.2d 55, 977 P.2d 574, 580 (1999).

11. Both the driver and a pedestrian have a duty to avoid a collision, but the primary duty rests upon the party not having the right-of-way. *Sulkosky*, 742 P.2d at 196.

12. Every person using a public street has the right to assume that others will use ordinary care and obey the rules of the road and have the right to proceed upon such an assumption until she knows, or in the exercise of reasonable care should know, to the contrary. *Poston v. Mathers*, 77 Wash.2d 329, 334, 462 P.2d 222, 226 (1969).

13. Considering the statutory duties and the facts of the case, both Plaintiff and Ms. Stoddard breached their respective duties of ordinary care.

    a. Plaintiff was familiar with the intersection, knew it was dark and that she was wearing dark clothing, left the safety of the sidewalk and entered the crosswalk without the walk signal, did not know whether she had a walk signal or traffic light, did not continually observe her surroundings and exercise due care for her safety, had approximately 7.7 seconds to observe the Postal Service vehicle before the collision, did not yield to the Postal Service vehicle, at some point should have known that the Postal Service vehicle was not yielding to her, did not see the Postal Service vehicle until it hit her, and did not attempt to avoid the collision.

    b. Ms. Stoddard was familiar with the intersection, knew it was dark and could be difficult to see in areas, knew that pedestrians were likely to be present and

observed pedestrians in the area of the collision, waited for and had a protected green turn arrow and the right-of-way, maintained a lookout while turning but looked to observe a vehicle facing her for approximately one second, had approximately 6.7 seconds to observe Plaintiff in the crosswalk before the collision even though external factors made that more difficult, did not yield to Plaintiff, at some point should have known that Plaintiff was not yielding to her, did not see Plaintiff until right before the collision, and attempted to avoid the collision.

14. In Washington, "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." Wash. Rev. Code § 4.22.005.

15. Both Plaintiff and Ms. Stoddard were at fault. Under the totality of the circumstances, Plaintiff was 80% at fault and Ms. Stoddard was 20% at fault.

16. Defendant is liable for damages proximately caused by its employee's negligence including past and future economic damages and noneconomic damages. Wash. Pattern Jury Inst. 30.02.01. Economic damages are "objectively verifiable monetary losses, including medical expenses, loss of earnings, [and]. . . loss of employment." Wash. Rev. Code § 4.56.250(1)(a). Noneconomic damages are "subjective, nonmonetary losses, including but not limited to pain, suffering, inconvenience, mental anguish, disability or disfigurement incurred by the injured party, [and] emotional loss." Wash. Rev. Code § 4.56.250(1)(b).

17. Medical Expenses:

a. Plaintiff may recover "[t]he reasonable value of necessary medical care, treatment, and services received to the present time." Wash. Pattern Jury Inst. 30.07.01; *Patterson v. Horton*, 84 Wash. App. 531, 543, 929 P.2d 1125, 1130 (1997) ("A plaintiff in a negligence case may recover only the reasonable value of medical services received, not the total of all bills paid."). "[M]edical records and bills are relevant to prove past medical expenses only if supported by additional evidence that the treatment and the bills were both necessary and reasonable." *Id.*; *Carr v. Martin*, 35 Wash. 2d 753, 761–62, 215 P.2d 411, 415–16 (Wash. 1950) ("proof of amounts of indebtedness incurred or paid for such services as are rendered by physicians, nurses and hospitals are not sufficient upon which to base a verdict or a judgment"). Even with the benefit of testimony as to the reasonableness and necessity of the medical expenses, the jury must determine the value of those services. *Sofie v. Fibreboard Corp.*, 112 Wash.2d 636, 645–47, 771 P.2d 711, 716–17 (1989) (noting jury's fact finding role and that jury's determination of damages is the ultimate fact); *Bishop v. Brand Energy & Infrastructure Servs.*, No. C11-5267BHS, 2012 WL 1145092, at *2 (W.D. Wash. Apr. 5, 2012) (partial summary judgment not appropriate as to the reasonableness of medical charges on basis of medical records and bills and declarations by providers that amounts were reasonable as evidence did not establish that no reasonable jury could conclude the amounts were unreasonable); *Whitford v. Mt. Baker Ski Area, Inc.*, C11-112RSM, 2012 WL 895390 at *2 (W.D. Wash. Mar. 15 2012) (same).

b. Plaintiff did not establish the reasonableness and necessity of some medical records and bills and those records are therefore not relevant to establish the reasonable value of Plaintiff's medical expenses.

c. Plaintiff's treating orthopedic surgeon, Dr. Clark, specifically testified that he did not "know what a reasonable charge for ambulance or hospitalization is," that he would "assum[e] that these particular hospital charges are a reasonable amount," and that he did not "have the expertise to determine whether the charges for the services are reasonable." Dkt. #63 at 217:24–25, 219:23–24, and 221:21–22.

d. Conversely, Dr. Clark had personal knowledge and testified to the reasonable and necessary value of lab work, imaging, provider visits, his own bills, anesthesiology, relevant nursing care for a hip fracture, and typical physical therapy charges. *Id.* at 223:25–224:10, 225:15–16, 226:18–20, 227:2–4, 230:7–9, 230:15–21, 231:13–16, 232:16–17, 232:23–233:1, and 250:12–23.

e. Plaintiff did not establish that the medical expense incurred at Seattle Heart & Vascular Services was related to, or proximately caused by, the collision.

f. The reasonable value of reasonable and necessary medical expenses incurred by Plaintiff as a result of the collision is $39,198.57.

18. Loss of Income:

a. As a result of the collision, Plaintiff was unable to work from the date of the accident until August 21, 2013. During that time, Plaintiff lost wages in the amount of $7,565.76.

b. As a result of the collision, Plaintiff was unable to work a second job and, over the years 2013, 2014, 2015, and 2016, lost earnings of $21,056.00.

19. As a result of the collision, Plaintiff suffered noneconomic damages in the amount of $75,000.

20. Defendant's proportional liability for the damages incurred by Plaintiff as a result of the collision is $28,564.07.

## V. ORDER

The Court awards Judgment for the Plaintiff against Defendant in conformity with the foregoing. This matter is now CLOSED.

DATED this 6th day of September 2018.

*[signature]*

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

FINDING OF FACTS AND CONCLUSIONS OF LAW AND ORDER – 17